CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 20, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DURWIN EVANT BONDS, JR.,** ) | |
| Plaintiff, ) | Case No. 7:23-cv-00579 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **JEFFREY ARTRIP,** et al., ) | Senior United States District Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

Durwin Evant Bonds, Jr., a state inmate proceeding pro se, filed this civil action under 42 U.S.C § 1983 against 12 individuals employed at Wallens Ridge State Prison. The case is presently before the court for review under 28 U.S.C. § 1915A(a). For the reasons stated below, the majority of the claims asserted in the complaint will be dismissed without prejudice for failure to state a claim upon which relief may be granted. The case will proceed on certain claims asserted against three defendants.

### I.  Summary of Allegations and Claims

The court has reviewed all of the allegations in the lengthy handwritten complaint. For the sake of brevity, the court will not recite all of the allegations here. Instead, the court will summarize the allegations necessary to provide context for Bonds's various claims.

Bonds is a Muslim inmate who was previously incarcerated at Wallens Ridge. His claims stem from a series of events that occurred at the prison in August 2023, shortly after being transferred from Red Onion State Prison. After arriving at Wallens Ridge, Bonds attempted to notify staff that the water provided in Cambro food storage containers was not hot enough to mix with certain foods served as part of the sealed religious diet (SRD), such as farina and

noodles. According to Bonds, farina should be mixed with boiling water and cooked on a stove or microwave, but inmates at Wallens Ridge do not have access to those appliances. When Bonds filed an informal complaint directed to the food service department, S. Stallard responded that the temperature of the water in the food storage containers was 146 degrees Fahrenheit and therefore should be sufficiently hot. Bonds alleges that Stallard's response was "far from the truth," Compl., ECF No. 1, at 2, and that he proceeded to file a grievance reviewed by Jeffrey Artrip, the Warden of Wallens Ridge.

On the morning of August 14, 2023, Bonds complained to Correctional Officer Clouse and Correctional Officer Brickley about the temperature of the water and attempted to show them that "the farina was not bonding with the water provided at 7:30 a.m." Id. at 3–4. Bonds alleges that Clouse "argued with Bonds from 7:30 a.m. to 7:43 a.m." and then "physically assault[ed him] by using the tray slot as a weapon and/or projectile" and by "throw[ing] food on Bonds." Id.; see also id. at 6 (alleging that Clouse "slam[med] Bonds's hands in the slot").

Following the incident with Clouse, prison officials placed Bonds on a "loaf diet" and presented him with "falsified" disciplinary charges. Id. at 4. Bonds alleges that Sergeant Caudill, Lieutenant Kimberlin, and Major Hall "authorized" a loaf meal to be served in place of his SRD meal on August 14, 2023. Id. at 7, 20. He also alleges that Caudill and Kimberlin denied his request for "medical access" following the altercation with Clouse. Id. at 7.

On August 16, 2023, Bonds covered his cell window to protest being placed on the loaf diet. He also attempted to file an emergency grievance challenging the decision, but Lieutenant Boggs and Major Hall refused to assist him with the grievance paperwork. See id. at 4–5.

2

Bonds alleges that Sergeant Dean "alter[ed] and falsified" the disciplinary forms that he served on Bonds and that Hearing Officer Ewing accepted the falsified forms and "presented them as legitimate bills (charges)." Id. at 6. He further alleges that Counselor Treadway refused to allow him to watch surveillance footage relevant to the disciplinary charges and that Ewing denied him the opportunity to present evidence in his defense. Id. at 6, 8, 17. Bonds also alleges that Captain Bailey refused to investigate "the incident" related to the charges that occurred on August 14, 2023. Id. at 6. Bonds alleges that money was "taken from [him]" as a result of the charges. Id. at 21.

In the "Claims" section of the complaint, Bonds sets forth three separate counts. Count One seeks relief for alleged violations of his right to due process by various defendants. Id. at 7–20. In Count Two, titled "Petition the Government for Redress," Bonds claims that Boggs and Hall refused to assist him in filing an emergency grievance and that Hall and other officers "authorized" the decision to serve him a loaf meal. Id. at 20. Count Three, titled "Cruel and Unusual Punishment," includes claims of excessive force and deliberate indifference in violation of the Eighth Amendment. Id. at 20. Similarly, in his "Statement of Claim," Bonds asserts that he was denied due process, subjected to "inhumane treatment," and deprived of "his right to receive proper redress for his grievances and request emergency relief." Id. at 1.

## II. Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). The court must "dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for

3

failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks and brackets omitted). Additionally, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020). A complaint filed by a pro se plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III. Discussion

**A.     Claims Subject to Dismissal for Failure to State a Claim**

4

Bonds seeks relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### 1.   Due Process Claims Asserted in Count One

Bonds asserts claims for denial of due process against multiple defendants. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To establish that a government actor violated this proscription, 'a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.'" Cartagena v. Lovell, 103 F.4th 171, 182 (4th Cir. 2024) (quoting Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015)).

#### a.   Meal-Related Claims

Bonds claims that various defendants deprived him of due process by failing to provide "boiling hot water to cook his SRD meals" and by authorizing "'loaf' [to be served] in place of his SRD meal." Compl. at 13–14. He alleges that defendants acted contrary to SRD "menu training" by not providing adequately hot water and that the loaf meal was served "as a sanction" on August 14, 2023, in violation of Virginia Department of Corrections (VDOC) policy.

5

Bonds has not plausibly alleged that the defendants deprived him of a liberty interest protected by the Due Process Clause. "In the carceral context, a prisoner claiming a violation of his right to procedural due process must show: (1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023) (internal quotation marks omitted); see also Sandin v. Conner, 515 U.S. 472, 484 (1995) (establishing the "atypical and significant hardship" test). "Satisfying these requirements is a difficult task, and intentionally so." Desper v. Clarke, 1 F.4th 236, 247 (4th Cir. 2021).

Even if the court were to assume that Bonds could meet the first requirement, his allegations are insufficient to satisfy the second requirement. In short, the allegations in the complaint do not plausibly suggest that the meal-related issues Bonds experienced were "so atypical that exposure to them . . . imposed a significant hardship in relation to the ordinary incidents of prison life." Sanchez v. Allen, 611 F. App'x 792, 795 (5th Cir. 2015) (concluding that an inmate's placement on the food-loaf diet for seven days did not implicate a liberty interest); see also Griffis v. Gundy, 47 F. App'x 327, 328 (6th Cir. 2002) ("Under the Sandin standard, a due process claim based upon being fed food loaf is no longer viable."); Russell v. Wilkinson, 79 F. App'x 175, 178 (6th Cir. 2003) (holding that the discontinuation of an inmate's kosher meals did not amount to an atypical and significant hardship); Gates v. Huibregtse, 68 F. App'x 326, 328 (7th Cir. 2003) (finding no merit to an inmate's claim that he was entitled to a hearing before being placed on a loaf diet); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (concluding that inmates possessed no liberty interest in avoiding

6

conditions of confinement for six months that included being served cold food in considerably smaller portions than those served to inmates in general population). Because the meal-related allegations do not implicate a protected liberty interest, Bonds has no viable due process claim predicated on the failure to provide boiling water or his receipt of a loaf meal. Accordingly, these claims must be dismissed.

### b.　　Claims Related to Disciplinary Forms

Bonds claims that he was deprived of due process as a result of being served "altered and/or fictitious" disciplinary forms. Compl. at 8. For instance, Bonds alleges that Captain Bailey "allowed his subordinate defendant Sgt. Dean to sign his signature to . . . the penalty offer to defraud the record." Id. He alleges that Dean also "failed to certify the penalty offer" and "failed to serve the penalty offer after he served the disciplinary offense report." Id. at 9–10. Bonds further alleges that Warden Artrip failed to enforce policy provisions applicable to the "serving officer" and "allowed his subordinates to alter a VDOC instrument and/or government document." Id. at 7.

These allegations fail to state a plausible claim for relief against Bailey, Dean, or Artrip. "A claim that a prisoner was 'improperly charged with [disciplinary offenses],' standing alone, does not state a due process claim." Harris v. Smith, 482 F. App'x 929, 930 (5th Cir. 2012) (quoting Collins v. King, 743 F.2d 248, 253 (5th Cir. 1984)); see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges . . . , standing alone, do not state constitutional claims."); Freedom v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty

7

interest."). Likewise, "any failure by prison officials to follow internal correctional policies is insufficient, without more, to support [a § 1983] claim." Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013); see also Ralston v. Clarke, No. 7:23-cv-00716, 2025 WL 2212085, at *6 (W.D. Va. Aug. 4, 2025) ("[V]iolations of deadlines or procedures set forth in VDOC disciplinary procedural regulations do not rise to the level of a federal constitutional violation actionable under § 1983.") (citing Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)). Accordingly, the disciplinary-related claims asserted against Bailey, Dean, and Artrip must be dismissed.

### c. Claim of Failure to Investigate

Bonds also asserts that Bailey deprived him of due process by failing to investigate "the incident" in which he was "victimized by inhumane treatment." Compl. at 6. This claim is also subject to dismissal. In general, "there is no independent constitutional right to investigation of a third party." Gilliam v. Sealey, 932 F.3d 216, 240 (4th Cir. 2019). To the extent Bonds alleges that Bailey failed to investigate grievances complaining about the events in question, he "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). Thus, "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Id.

### 2. Grievance-Related Claims Asserted in Count Two

In Count Two, titled "Petition the Government for Redress," Bonds alleges that Sergeant Boggs refused to process an emergency grievance that Bonds attempted to file on August 16, 2023, and that Major Hall refused to assist him during rounds on August 15, 2023.

8

Bonds's allegations of being denied access to the grievance process fail to state a claim upon which relief may be granted. It is well established that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Thus, Bonds "cannot bring a § 1983 claim alleging denial of a specific grievance process." Id.

In the same count, Bonds alleges that "Major Hall also fed Bonds 'loaf' (authorized)." Compl. at 20. Elsewhere in the complaint, Bonds alleges that Sergeant Caudill and Lieutenant Kimberlin "authorized" a loaf meal to be served in place of his SRD meal on August 14, 2023, and that they did so in "retaliation" for his "peaceful protest." Id. at 7. Consequently, the court liberally construes the complaint to allege that Hall, Caudill, and Kimberlin retaliated against him in violation of the First Amendment.

"[T]he First Amendment prohibits public officials from retaliating against individuals for having engaged in protected speech." Gowen v. Winfield, 130 F.4th 162, 173 (4th Cir. 2025) (citing Booker, 855 F.3d at 545). "To state a First Amendment retaliation claim, a plaintiff 'must allege that: (1) he engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between his protected activity and the defendant's conduct.'" Id. (quoting Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2010)).

Even assuming that Bonds's protest was entirely peaceful, he has not plausibly alleged that the loaf meal served to him in place of his SRD meal constituted the type of adverse action that satisfies the second element of a retaliation claim. "For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the

9

defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Jones v. Solomon, 90 F.4th 198, 214 (4th Cir. 2024) (internal quotation marks omitted). The nature of the allegedly retaliatory act must "be more than de minimis or trivial." Snoeyenbos v. Curtis, 60 F.4th 723, 730 (4th Cir. 2023) (internal quotation marks omitted). "Multiple courts . . . have repeatedly held that the denial of a single meal (or several nonconsecutive meals) does not rise above the de minimis level to constitute an adverse action for a retaliation claim." Hawley v. Salamon, No. 3:25-cv-0728, 2025 WL 2154362, at *7 (M.D. Pa. July 29, 2025) (collecting cases); see also Moore v. Liewert, No. 22-2056, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023) (holding that "the denial of a single meal, even taking into consideration Moore's diabetes, is a de minimis event that would not deter a prisoner of ordinary firmness from engaging in protected conduct"). Courts have likewise held that "receiving food loaf for a finite period of time is insufficient adverse action." Sears v. Mooney, No. 1:17-cv-00050, 2019 WL 6726839, at *8 (M.D. Pa. Dec. 11, 2019) (collecting cases). Consistent with these decisions, the court concludes that Bond's allegations of being served a loaf meal in place of his SRD meal do not describe the type of adverse action required to state a First Amendment retaliation claim. For these reasons, the claims asserted in Count Two must be dismissed.

### 3. Eighth Amendment Claims Asserted in Count Three

#### a. Meal-Related Claims

As part of Count Three, Bonds alleges that various defendants violated the Eighth Amendment by failing to provide boiling hot water with his SRD meals or by replacing an SRD meal with a loaf meal. The Eighth Amendment's prohibition of cruel and unusual

punishment "applies to claims by prisoners against corrections officials challenging conditions of confinement." Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019). "Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components." Id. (internal quotation marks omitted). To satisfy the objective component, a prisoner must set forth facts showing that the deprivation alleged was sufficiently serious. Id. "Only extreme deprivations" are sufficient to satisfy this component. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). In particular, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions" or "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Id. (internal quotation marks omitted). To satisfy the subjective component, an inmate must show that the prison official "actually kn[ew] of and disregarded[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference is an "exacting standard" that is not met by a showing of "mere negligence or even civil recklessness." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

Applying these standards, the court concludes that the meal-related allegations fail to state a plausible Eighth Amendment violation. Bonds has not alleged facts suggesting that he was subjected to the type of extreme deprivation sufficient to satisfy the objective component. See, e.g., Laufgas v. Speziale, 263 F. App'x 192, 198 (3d Cir. 2008) ("[W]hile prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, there is no constitutional right to hot meals.") (internal citations omitted); Griffis v. Gundy, 47 F. App'x 327, 328 (6th Cir. 2002) ("A diet of food loaf does not violate the prohibition against cruel

11

and unusual punishment . . . ."); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1992) ("LeMaire's complaint regarding the use of Nutraloaf does not rise to the threshold level of a deprivation that satisfies [the] objective component. The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing. The fact that the food . . . sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.") (internal quotation marks and citations omitted). Nor does the complaint set forth facts sufficient to show that any of the named defendants consciously disregarded an excessive risk to his health or safety by not providing boiling water with his SRD meals or by serving him a loaf meal. To the extent Bonds suggests that boiling water is required "per policy," Compl. at 20, a mere violation of an internal policy is not in itself sufficient to support an Eighth Amendment claim. See King v. Riley, 76 F.4th 259, 267 (4th Cir. 2023) ("[K]nowingly violating a prison policy does not amount to deliberate indifference. Not every violation of prison policy is a violation of the constitution.") (internal citations omitted); Mason v. Lafayette City-Parish Consol. Gov't, 806 F.3d 268, 279 (5th Cir. 2015) ("A failure to follow official policy, by itself shows, at most, negligence and cannot support a finding of deliberate indifference.").

      **b.**    **Claims for Denial of Access to Medical Attention**

For similar reasons, the court concludes that the complaint fails to state an Eighth Amendment claim of deliberate indifference against Sergeant Caudill and Lieutenant Kimberlin. "A successful medical deliberate indifference claim has 'two components, objective and subjective.'" Phoenix v. Amonette, 95 F.4th 852, 859 (4th Cir. 2024) (quoting Jackson, 775 F.3d at 178). "The objective component requires that the plaintiff's medical condition

. . . be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted). "The subjective component requires showing that the defendant had actual subjective knowledge of both the plaintiff's serious medical condition and the excessive risk posed by the official's action or inaction." Id. (internal quotation marks and brackets omitted).

Bonds's complaint does not contain sufficient factual matter to satisfy either component. He alleges that Caudill and Kimberlin denied his request for medical attention following the altercation with Correctional Officer Clouse. Compl. at 7, 20. However, he does not describe any particular injuries resulting from Clouses's actions. Therefore, Bonds has not plausibly alleged that his medical needs were sufficiently serious to satisfy the objective component or that Caudill and Kimberlin acted with the state of mind necessary to satisfy the subjective component. Thus, the complaint fails to state a claim of deliberate indifference against Caudill or Kimberlin.

**B.     Remaining Claims**

Bonds claims that Lieutenant Clouse used excessive force against him on August 14, 2023. Bonds also appears to allege that Counselor Treadway and Hearing Officer Ewing deprived him of due process by interfering with his ability to access and present evidence relevant to the disciplinary proceedings arising from that incident. The court will require Clouse, Treadway, and Ewing to respond to these claims.

### IV. Conclusion

For the reasons stated, Bonds's complaint is partially dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the remaining claims asserted against Clouse, Treadway, and Ewing as identified in § III. B. above. An appropriate order will be entered.

Entered: August 19, 2025

Michael F. Urbanski
U.S. District Judge
2025.08.19
16:38:09 -04'00'

Michael F. Urbanski
Senior United States District Judge